UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ADVANCED MICRO DEVICES, INC.,

Plaintiff,

v.

ROBERT FELDSTEIN, MANOO DESAI,
NICOLAS KOCIUK, and RICHARD
HAGEN,

Defendants.

Civil Action No. 13-40007-TSH

## DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO AMD'S MOTION FOR PRELIMINARY INJUNCTION

As allowed by the Court on February 22, defendants Robert Feldstein, Manoo Desai,

Nicolas Kociuk, and Richard Hagen (collectively "Defendants") submit this supplemental

opposition to the Motion for Preliminary Injunction filed by plaintiff Advanced Micro Devices.

Defendants Feldstein, Desai and Kociuk acknowledge that AMD documents should not

have been copied to their personal devices. That, however, is not the issue before the Court on

this Motion for Preliminary Injunction. The documents have been returned and are no longer in

their possession. There is therefore no need for a preliminary injunction to restrain them from

doing something with documents they do not have. As addressed before the Court at hearings

held on February 21st and 22nd, 2013, and as set forth more fully in Defendants' Opposition to

Motion for Preliminary Injunction, a preliminary injunction is an extraordinary remedy that is

never granted without good reason. To obtain such relief, a plaintiff must fully satisfy four

distinct prongs: (1) likelihood of success on the merits; (2) likelihood plaintiff will suffer

irreparable harm absent preliminary relief; (3) a balance of equities in favor of plaintiff; and (4)

that an injunction is in the best public interest. These are independently *required* elements that

must be satisfied before a plaintiff can obtain a preliminary injunction. Contrary to AMD's assertions, there is no presumption of irreparable injury applicable here.

AMD has not demonstrated a likelihood of success on the merits. With regard to its trade secret misappropriation claims, AMD has not demonstrated that the materials at issue constitute trade secrets, nor has it made any showing of actual use of that information. Its attempts to argue that actual use is not required rely on incorrect readings of applicable cases.

AMD similarly has not shown a likelihood of success on its breach of contract claims because there has been no use of any confidential information and because the acts of Defendants do not meet the legal definition of "soliciting."

AMD also has not, and cannot, demonstrate how it might be irreparably harmed if this Court does not issue the extraordinary relief it seeks. Even assuming any of the copied information qualifies as a protectable trade secret, there can be no "irreparable harm" because Defendants have already returned all of the information. Similarly, AMD has not put forth any evidence that, but for injunctive relief, it is likely to be irreparably harmed by employee solicitation by any Defendant here.

As to the balance of equities, AMD would have this Court believe it is asking for Defendants to simply do that which they agreed to do. However, the truth is that AMD is in desperate shape, as evidenced by the $200,000 retention bonus it offered to Ms. Desai that she turned down because of conditions at AMD.[1]  AMD is using the litigation to punish the Defendants, harm their reputations and possibly their careers, and, more importantly to it, to send a strong message that will discourage its remaining employees from leaving.

Certainly, as to the final factor, an injunction in this matter would *not* be in the best

---

[1] Indeed, Ms. Desai turned down this bonus without any attempt to use that offer to obtain more money from NVIDIA, demonstrating her strong desire to leave AMD.

2

public interest, considering policy implications regarding employee mobility and AMD's misuse of the Court's resources. As a matter of Massachusetts policy, at-will employees should be allowed to change employers freely and competition should be encouraged. *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172 (1991).

### *Argument*

I.    <u>Plaintiff Is Unlikely To Succeed On The Merits</u>

As set forth more fully in Defendants' Opposition to Motion for Preliminary Injunction, AMD is not likely to succeed on the merits of its claims. None of the individual Defendants has used AMD's alleged trade secrets, they do not compete with AMD, the Computer Fraud and Abuse Act does not apply because AMD granted Defendants access to the data, there is no duty of loyalty here, Defendants have not breached any contractual obligations (because they have not solicited AMD employees nor used any trade secrets), and AMD's civil conspiracy claim fails because it cannot succeed on any underlying tort.

A.    *AMD Has Not Shown The Existence Of Any Trade Secrets.*

Plaintiff attempts to cast a broad characterization of the information at issue as constituting a "trade secret," going so far in their Bench Memo as to ascribe heightened trade secret status even to the identities of AMD employees. (Bench Memo, p. 11). This is not the appropriate standard for trade secret status.

Citing to MASS. GEN. LAW ch. 93, § 42, Plaintiff claims that statutory trade secret protection applies because, according to Plaintiff, Defendants stipulated that some of the information was "confidential." Just because a document is confidential does not necessarily make it a trade secret. Plaintiff's broad-brush treatment of the information at issue presumptively constituting a "trade secret" apparently arises from its assumption that the

information qualifies as "secret" under Massachusetts statutory law.  However, the

Massachusetts Appeals Court has held

> we do not in any way intimate that these statutes change the ambit of trade secret protection in a civil action. … We find it difficult to believe that these statutes [Mass. Gen. Law ch. 93 §§ 42-43], read together with the definition of trade secrets in G.L. c. 266, d 30 (4), were meant to change the common law of trade secrets to permit damages where nothing of value has been taken or an injunction protected valueless information contrary to traditional and long-settled equity principles.

*Chomerics, Inc. v. Ehrreich*, 12 Mass App. Ct. 1, n.14 (1979).

The relevant factors in determining whether information constitutes a *trade secret* under

Massachusetts law, for purposes of triggering trade secret protection, are:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information can be properly acquired or duplicated by others.

*Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 840 (1972); *see also* Restatement of Torts,

Sec. 757, comment b. There will be no finding of trade secret protection, for purposes of

Massachusetts trade secret law, unless the employer can show that it took all "proper and

reasonable steps… to protect the secrecy or knowledge." *Id.*; *see also J.T. Healy & Son, Inc. v.

James A. Murphy & Son, Inc.*, 260 N.E. 2d 723 (Mass. 1970).  AMD has made no showing

whatsoever about the nature of the information allegedly taken by Mr. Kociuk or Ms. Desai.

There is, therefore, no basis whatsoever for the Court to find that information constitutes trade

secrets.

As to the information copied by Mr. Feldstein, AMD focused at the hearing on four

documents. Two of those, which were admittedly never looked at by Mr. Feldstein since leaving

AMD, are draft contracts, and the sole AMD employee to testify about them admitted she did not know whether what was in those drafts differed from the signed versions. Additionally, once signed, those contracts locked the contracting parties into long-term contracts with AMD. There is no basis to conclude that the information is valuable to anyone outside AMD. Another document was a status report well over a year old for products then in development but now on the market. Again, there is no showing that this document is valuable outside AMD. The final document, the only one shown to have been opened since Mr. Feldstein left AMD, was almost entirely composed of information in the public domain collected by Mr. Feldstein into a document based on licensing strategies also in the public domain.

Additionally, apparently in order to lay the foundation for this lawsuit, AMD allowed Mr. Kociuk to remove from AMD a 2TB hard drive knowing that it had copies of information, thus either demonstrating that information is not valuable or that AMD did not take reasonable efforts to maintain the secrecy of this information, or both.

For all these reasons, AMD has not demonstrated the existence of any trade secret here.

B.    *Plaintiff Has Not Demonstrated Actual Use Of Trade Secrets.*

Even assuming any of the information at issue qualifies as a trade secret, Plaintiff is unlikely to succeed on the merits because it has not demonstrated any actual *use* of the alleged trade secret information, as required by law.

Citing MASS. GEN. LAW ch. 93, § 42A, AMD claims that injunctive relief is appropriate for merely *transferring* or *copying* allegedly trade secret material, and that it need not demonstrate actual use.  (Bench Memo, p. 6.)  AMD disingenuously omits the second paragraph of that statutory section – which deals directly with injunctive relief and in fact supports Defendants in requiring a showing of actual use:

> In an action by an employer against a former employee under the provisions of this section for the conversion of a trade secret and where such conversion is in violation of the terms of a written employment agreement between said employer and employee, said employer shall, upon petition, be granted a preliminary injunction **if it is shown that said employee is working in a directly competitive capacity** with his former employer in violation of the terms of such agreement **and** that in violation of the terms of such agreement said employee **has used such trade secret in such competition.**

MASS. GEN. LAW ch. 93, § 42A (emphasis added). Thus, the statute does not allow injunctive relief based on the acquisition of a trade secret, but rather only for its *actual use* in *competition* with the former employer.

The full statutory language, requiring actual use in competition, accords with Massachusetts common law. As discussed more fully in Defendants' Opposition to Motion for Preliminary Injunction and below, Massachusetts authority is clear that a plaintiff must prove *actual use or disclosure* of the information as a necessary element of a misappropriation claim.

Indeed, Massachusetts' Supreme Judicial Court has unequivocally held that a Massachusetts plaintiff must prove *actual use* of a trade secret to state a claim for misappropriation. In *USM Corp. v. Marson Fastener Corp.* the Court held that a "plaintiff has an unshifting burden to prove that the defendant misappropriated *and wrongfully used* the plaintiff's trade secret." *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 352 n.17 (1984) (emphasis added). The plaintiff in *USM Corp.* brought suit for misappropriation of trade secrets contained in a machine used to manufacture blind rivets. *Id.* at 334. In holding that trade secret misappropriation occurred, the Supreme Judicial Court recognized that this was only true due to the use of the trade secrets, which led to actionable damages. The Supreme Judicial Court flatly rejected the trial court's "alternative ground" for liability – that is, based on a type of inevitable disclosure following the acquisition of the trade secret – and instead ruled that a plaintiff must establish that the defendant *actually used* the trade secret at issue.

6

Similarly, in *JetSpray Cooler, Inc. v. Crampton*, 377 Mass. 159 (1979), the Supreme Judicial Court outlined the following steps for trial courts presented with misappropriation claims:

> [O]nce information is demonstrated to be of an appropriate nature to qualify the information as a trade secret, any inquiry into the misuse of the trade secret must focus on the conduct of the defendant.  If the defendant has acquired the information as a result of a confidential relationship which he enjoyed with the plaintiff *and if the defendant has used the information without the permission of the plaintiff*, then the defendant's *use* of the information is wrongful, and the defendant is liable to the plaintiff in damages for the wrongful *use* of the information.

*Id*. at 168 (emphasis added, citations omitted).  Thus, contrary to AMD's assertions (*see* Bench Memo, p. 6, n.4), the court in *JetSpray Cooler* expressly held that a defendant is liable to the plaintiff in damages only for the actual "wrongful use" of confidential information.

The requirement of showing "actual use" to support a trade secret misappropriation claim is also consistent with the courts' rejection of the inevitable disclosure and inevitable use trade secret doctrines.  *See, e.g., IPL Sys., Inc. v. Wirth*, No. 925816E, 1993 WL 818576, at *5 (Mass. Super. Nov. 30, 1993) (Butler, J.) (holding that G.L. c. 93, § 42 "does not provide relief for potential violations of its terms"); *CSC Consulting, Inc. v. Arnold*, No. 01800, 2001 WL 1174183, at *3 (Mass. Super. Jul. 12, 2001) (Houston, J.) (acknowledging that Massachusetts does not recognize misappropriation of trade secrets based upon "a theory of inevitable disclosure"); *Architext, Inc. v. Kikuchi*, No. 0500600, 2005 WL 2864244, at *3 (Mass. Super. May 19, 2005) (Lowy, J.) (confirming that no Massachusetts court has adopted the theory of inevitable disclosure in the trade secret context).

AMD attempts to avoid the actual use requirement and instead argues that it is sufficient to allege "intended to use" a trade secret. The only authority AMD cites, in addition to the truncated statutory language as discussed above, is the unreported superior court decision of

*Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp.*, No. 98-1435-D, 2002 Mass. Super. LEXIS 181, *21 (2002). However, that case does not aid AMD. The only references to the term "intent" used in the *Mill-Bern* decision are quotations of the same statutory language that, again, requires a showing of actual use in competition for purposes of injunctive relief. Despite what AMD would have this Court believe, the *Mill-Bern* decision cites a long line of authorities for the following elements to prove trade secret misappropriation, even if brought under the Massachusetts statutes:

> To demonstrate misappropriation of trade secrets, a plaintiff must prove that: (1) the information in question is a trade secret; (2) the plaintiff took reasonable steps to preserve the secrecy of that information; and (3) the defendant used improper means, in breach of a confidential relationship, to acquire *and use* the trade secret.

*Id.* at *6 (emphasis added).

Indeed, the *Mill-Bern* court granted summary judgment *to the defendants*, because "No evidence indicates that … [individual defendants] took *or used* any such material, either personally or on behalf of [their employer]." *Id* (emphasis added). It is inexplicable that AMD would cite this authority for the exact opposite proposition. (*See* Bench Memo, p. 5, n.2.) In fact, AMD *concedes* in its Bench Memo that, for trade secret misappropriation, a plaintiff must demonstrate improper means "to acquire *and use* the trade secrets." (Bench Memo, p. 5, *citing Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 340, 357 (D. Mass. 1993).)

AMD further attempts to avoid this required element of "use" with a weak argument that the word "use" might be broadly construed to include transferring or copying trade secret information (Bench Memo, p. 6) – thus arguing for a collapse of the misappropriation standard wherein the elements of acquisition and use become one and the same. This argument clearly deviates from established legal authorities.

AMD correctly notes that the court in *EchoMail, Inc. v. American Express Co.*

substantively addresses the meaning of the word "use" for purposes of considering a preliminary injunction. (Bench Memo, p. 6, *citing EchoMail, Inc. v. American Express Co.*, 378 F. Supp. 2d 1, 3 (D. Mass. 2005)). It errs, however, in claiming this authority to be "readily distinguishable." (*Id*.). As set forth in *EchoMail*, the third prong of a trade secret misappropriation matter under Massachusetts law "requires a showing that [defendant] *actually used* the trade secret information." *EchoMail*, 378 F. Supp. at 3. As with the instant litigation matter, the plaintiff in *EchoMail* attempted to satisfy this element by claiming intended use (that the defendants "will improperly use" the trade secrets "in the absence of judicial intervention"), or, in the alternative, by expanding on the common definition of the word "use" by arguing that defendant "used the information by causing IBM to receive the information." *Id*. The court flatly rejected this argument for purposes of preliminary injunction, stating that the allegations of use were "weak, at best, and are insufficient to convince this Court that EchoMail is likely to succeed on the merits of its misappropriation claim." *Id*.

As to the extended theory of what constitutes "use" for misappropriation purposes, the District Court held that "it is doubtful that such a scenario can be considered 'use' of the information" and that the argument was "too far-fetched for this Court to accept as having a probability of success." *Id*. Similarly, the court outright rejected an argument that it should presume or infer use based on acquisition alone. *Id*. at 3-4. Thus, "[b]ecause Plaintiff has failed to convince this Court that its fears regarding AmEx's use of the information are well-founded, it is not likely to succeed on the merits of its misappropriation claim." *Id.* at 4.

AMD cites to a later summary judgment decision in *EchoMail* in an effort to diminish the authority relevant to preliminary injunctions. In 2007, the court denied defendant AmEx's motion for summary judgment because of evidence that called its "good faith" into question.

(Bench Memo, p. 6, *citing EchoMail, Inc. v. American Express Co.*, 529 F. Supp. 2d 140 (D. Mass. 2007).)  This additional evidence arose in the later context of summary judgment (and thus has little relevant to a preliminary injunction) and actually showed that AmEx "*used* EchoMail's proprietary information to guide its search for a new service provider" (in direct competition with EchoMail).  *Id*. at 149 (emphasis added).  As to the other defendant in *EchoMail*, as AMD concedes in the Bench Memo, the evidence *of use* remained too tenuous and unsupported at summary judgment, so the District Court granted summary judgment as to defendant IBM.  *Id*. at 147.  Thus, this additional authority – the summary judgment decision in *EchoMail* – only serves to further cut against AMD's proposition that they need not demonstrate actual use.

Here, as in *EchoMail*, AMD presents no evidence of actual use, but instead attempts to argue that it is sufficient to allege taking or copying of trade secrets. That is not the law, and cannot support the extraordinary injunctive relief they seek.  Even assuming the information at issue might qualify as trade secrets, AMD cannot show a likelihood of success on the merits of a trade secret misappropriation claim because it cannot show any actual use by Defendants.

C.       AMD *Is Not Likely To Succeed On The Merits Of Its Claim That Defendants Breached Their Contracts By Soliciting Employees.*

### 1.  AMD's "Subtle Encouragement" Standard Is Unworkable.

AMD argues in its Bench Memo that a court *might* conclude that solicitation occurred based on "subtle encouragement."  (Bench Memo, p. 8-9.)  Ignoring its burden of showing *likelihood of success* on such a claim, AMD concedes that this would be a "fact-specific, nuanced inquiry," and then claims that *if* Defendants "deprecated AMD or praised NVIDIA to a current AMD employee" then that *could* count as solicitation.  *Id*.  However, employee solicitation requires more than "subtle encouragement," and certainly AMD must demonstrate

more than allege the *possibility* of subtle encouragement in order to show a likelihood of success on the merits.

This Court need not delve into factually intense and nuanced inquiries to determine whether contractual terms were breached. AMD drafted the non-solicitation provision at issue. If there are ambiguities as to whether certain post-employment communications might constitute a breach, then such ambiguities must be construed against AMD as the drafter. *See*, *e.g.*, *Merrimack Valley Natl. Bank v. Baird*, 372 Mass. 721, 724 (1977) ("As a general rule, a writing is construed against the author of the doubtful language, . . . if the circumstances surrounding its use and the ordinary meaning of the words do not indicate the intended meaning of the language.").

Here, the non-solicitation provisions focus on efforts to solicit employees to *leave AMD*, while the evidence presented by AMD does not demonstrate any efforts to push employees to leave AMD. Indeed, the facts demonstrate just the opposite – Defendants expressly encouraged employees to *remain with* AMD, though they had no obligation to AMD to do so. Defendants decided to leave AMD of their own accord and for their own reasons, without any influence by the other Defendants. Certainly, the contractual provisions do not say that former employees can have no contact with their former colleagues after leaving employment with AMD, or that they would be precluded from discussing their subsequent employment experiences after leaving AMD. Such a provision, which is effectively what AMD now asks the Court to rewrite their contract to require, flies in the face of the Defendants' Constitutional rights of free speech and association.

Plaintiff's "subtle encouragement" standard is also practically unworkable within the preliminary injunction context. It is a long-standing requirement that any injunction must clearly

set forth what is, or is not, allowed so that the person enjoined can clearly understand what behavior they can, or cannot, undertake. *See*, *e.g.*, *Massachusetts Commission Against Discrimination v. Wattendorf*, 353 Mass. 315 (1967) ("To constitute a willful violation of the injunction there must be a clear and unequivocal command and an equally clear and undoubted disobedience." (internal citations omitted)). It would not be feasible for the Court to enjoin these individuals from any communication with their former colleagues and friends that might serve as "subtle encouragement." This would effectively require the individuals to never discuss their current employment, allow for any public postings about their employment (such as on LinkedIn, Facebook, or other forums), or otherwise continue to associate in any way with their former colleagues, for fear that they might be in violation of a court order – and this Court would be charged with ensuring that no innocuous statements "subtly encouraged" one to leave AMD. Obviously, this would raise serious concerns, including the Defendants' Constitutional rights to free speech and association. This cannot be, and is not, the appropriate standard.

### 2.  Solicitation Requires Active Persuasion To Leave Employment.

It takes more than "subtle encouragement" to unlawfully "solicit" an employee in breach of a contractual non-solicitation provision. Massachusetts requires taking active steps to persuade the employee to leave employment with the company. *See*, *e.g.*, *William Gallagher Assoc. Ins. Brokers, Inc. v. Everts*, 13 Mass. L. Rep. 716, 2001 WL 1334763 n.28 (Mass. Super. 2001) ("the terms 'called upon' and 'solicited' envision an *active, persuasive undertaking*." (emphasis added)).

The degree of active persuasion necessary to constitute solicitation depends, as an initial matter, on a determination of who initiates contact. As set forth below, Massachusetts authorities are in accord with the following standard regarding a showing of solicitation:  (1) if

12

the former colleague initiates contact, then solicitation requires a showing that the defendant engaged in an active, persuasive undertaking  – he or she is not precluded from general discussions about the new employment; (2) *only if* the former employee initiates contact *might* "solicitation" be demonstrated by less direct evidence.  There is no claim here that the former employee initiated the contact.

The authorities cited by AMD support this standard.  For example, AMD's Bench Memo cites to *Getman v. USI Holding Corp.*, 19 Mass. L. Rep. 679, 2005 Mass. Super. LEXIS 407, *10-13 (2005).  *Getman*  was a customer non-solicit case. The *Getman* court held that the defendant would *not* be barred from accepting business from former clients "if, without his solicitation of their business, they wish him to continue … to service their insurance needs. These clients, on their own, will have already come to the decision that it was Getman's good will they enjoyed, not that of USI, and they should be free to act upon that decision."  *Id*. at *8-9. By analogy here, Ms Desai and Mr. Kociuk (the employees accused of being solicited) had already, on their own, come to the decision that they no longer wanted to work for AMD, and they should be free to act upon that decision.

Citing to *Getman*, the U.S. District Court for Massachusetts has recognized that *who initiates contact* is an important factor for determining whether there has been an employee solicitation:  "'[T]here is plainly a real difference' between the company 'initiating a telephone call or meeting with [the employee] and the [employee] initiating that contact himself.'" *Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corporation*, 402 F. Supp. 2d 365, 371 (2005) (*citing Getman*, 2005 WL 2183159, at *4).  The *Wolverine* plaintiff attempted to argue that an employee breached a non-solicit provision by "indirectly" soliciting a former colleague.  The court noted that it was the former colleague who, on his own, contacted the defendant about

employment "without having been 'solicited' [by defendant] to do so." *Id*. at 370. The same is true here. The court went on to recognize that "the term 'solicitation' 'is defined as 'the act or an instance of requesting or seeking to obtain something; a request or petition.'" *Id*. at 371 (*citing* Black's Law Dictionary 653 (2d Pocket ed. 2001) and *Oceanair, Inc. v. Katzman*, 2002 WL 532475, 14 Mass. L. Rep. 414, at *6 (Mass. Super. 2002)). Thus, the court rejected an argument that responding to a request for information about employment might constitute solicitation. *Id*. This was particularly true considering that the matter involved a former colleague who was also a personal friend, and who initiated the call. *Id*. at 370. Thus, it was not solicitation to pass on a message that his new employer "would be delighted to entertain a resume" or to tell the former colleague to "send in a resume if his plans to leave [the former employer] solidified." *Id*. at 370.[2]

### 3. Other Authorities Accord With This Standard.

In addition to *Getman*, discussed above, AMD cites *State Street Corp. v. Barr*, 10 Mass. L. Rep. 99, 1999 Mass Super. LEXIS 432, *12-14 (1999), for its arguments that "subtle encouragement" may be sufficient to constitute solicitation, and that it does not matter who initiates contact. *State Street* does not stand for either proposition. First, *State Street* makes it clear that who initiates the contact is relevant, as is whether the defendants are driving communications with a clear aim at inducing employees to change their employment. Moreover, there was nothing subtle about the allegations in *State Street*. For example, the *State Street* defendants initiated conversations with their former colleagues, both before and after the defendants

---

[2] *See also RE Moulton Inc v Lee*, 18 Mass. L. Rep. 157, *1 (2004), in which the Superior Court of Massachusetts refused to issue a preliminary injunction, based on alleged employee solicitation, when the record showed that a recruiter had already initiated contact with employees before they discussed possible employment with a former colleague who was subject to a non-solicitation provision. This is exactly what happened in the case of Mr. Kociuk and Ms. Desai – the recruiter from NVIDIA had already initiated contact with them before they had contact with their co-defendants.

separated from employment with the plaintiff, "regarding employment opportunities" with the new

employer. *Id.* at *13. At least one employee explicitly testified that a defendant "encouraged him to

explore employment opportunities" with the new employer. *Id*. One of the defendants conceded to

reaching out to the former colleagues, but weakly claimed he was doing so only as a courtesy to

advise that "a headhunter for [the new employer] might be in contact with them." *Id*. Such

communications occurred in concert with targeted efforts by headhunters to recruit certain

employees. Not surprisingly, based on such facts, the court held that the plaintiffs sufficiently

demonstrated a likelihood of success on the merits. Such facts are clearly distinguishable – AMD

has not alleged or demonstrated any such targeted recruitment efforts orchestrated by defendants

here.

Plaintiff also relies on *PartyLite Gifts, Inc. v. Macmillan*, No. 8:10-CV-1490-T-27EAJ,

2012 U.S. Dist. LEXIS 128905, *39 n.20 (M.D. Fla. Sept. 11, 2012), to support its argument that

more subtle encouragement may be sufficient. The *PartyLite* court, again, expressly recognized

a "meaningful difference" between a situation in which a former client initiated the call,

compared to efforts initiated by the defendant.[3]  *Id*. at *40. Moreover, there again was nothing

"subtle" about the solicitation at issue in *PartyLite*:  the defendant "did not simply accept calls"

but "engaged in an orchestrated scheme in which *she initiated contact* with Consultants for the

express purpose of informing them that she was joining Park Lane, *readily discussed the benefits*

*associated with working at Park Lane*, and *offered to arrange a meeting between the Consultant and*

*a Park Lane representative* (a representative who, coincidentally, was available to immediately

meet with an interested Consultant)." *Id*. at *39-40 (emphasis added). Notwithstanding such

---

[3] *PartyLite* addresses solicitation in the context of *summary judgment* – a wholly different standard from that applicable to a preliminary injunction. Under the summary judgment standard, construing all disputed issues of material fact in favor of the party opposing summary judgment, the *PartyLite* court merely concluded that it was not appropriate to summarily conclude that no solicitation occurred when the parties disputed material facts. This hardly suggests that a party may be "likely to succeed" on such claims.

evidence, the court still refused to grant summary judgment based on alleged solicitation, as it concluded that "[r]egardless of the persuasiveness of PartyLite's evidence, there are, at a minimum, disputed material facts which must be resolved by a jury." *Id*. at *42. [4]

Thus, even the cases cited by AMD actually support Defendants' position: "solicitation" requires an active effort to persuade an employee to leave AMD. Under this standard, AMD has shown no employee solicitation. The undisputed evidence shows that Mr. Kociuk and Ms. Desai, the defendants AMD claims were solicited, made his or her own decision to leave AMD, independent of any actions by the other defendants. Each was contacted by NVIDIA's recruiter without any input from the other defendants. None of the defendants suggested to NVIDIA that it should recruit Mr. Kociuk or Ms. Desai (or any other AMD employee). None of the defendants participated in interviews of Mr. Kociuk and Ms. Desai (or any other AMD employee). None of the defendants shared the qualities or pay of Ms. Desai and Mr. Kociuk (or any other AMD

---

[4] The other cases cited by AMD similarly do not help its cause. *Alexander & Alexander, Inc. v. Danahy*, 21 Mass. App. Ct. 488, 491, 499 (1986), involved a *customer* non-compete in the *sale of business* context, which the court expressly noted is an important distinction: "[T]here are considerations which dictate that noncompetition covenants arising out of the sale of a business be enforced more liberally than such covenants arising out of an employer-employee relationship." *Id*. at 496. In contrast to parties in a sale of business, "an ordinary employee typically has only his own labor or skills to sell and often is not in a position to bargain with his employer. Postemployment restraints in such cases must be scrutinized carefully to see that they go no further than necessary to protect an employer's legitimate interests, such as trade secrets or confidential customer information." *Id*.

In *Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195, 2008 U.S. Dist. LEXIS 90986 (S.D.N.Y. Oct. 31, 2008) (unpublished), again, there was nothing "subtle" about the solicitations at issue. The court dedicates eight pages of its opinion to detailing active recruitment efforts that included reaching out to numerous employees over a three week period to set up meetings, discussing available compensation opportunities, and issuing tailored offer letters, resulting in nearly immediate acceptance and resignation from employment with the plaintiff. *Id*. at *30-38. The court further concluded that the evidence showed direct involvement in these efforts by the former employee, who engaged directly with the targeted employees, was responsible for identifying which employees to target, directed the recruitment efforts by the new employer, and was directly involved in preparing their offers of employment. *Id*. at *64.

The agreement at issue in *Ziplink, L.L.C. v. Pencom Systems, Inc.*, No. 97-01787B, 1999 Mass. Super. LEXIS 115, prohibited a third party computer software consulting entity from soliciting *or employing* any of its employees. *Id*. at *3. As the court noted, the "crux of Ziplink's argument is that Pencom breached the Agreement by *hiring* Jones." *Id*. at *6 (emphasis added). The court held that it *need not reach any decision* as to whether or not Pencom *solicited* Jones, because the agreement also prevented hiring him. *Id*. at *7.

These cases are clearly distinguishable from the situation here. AMD presented no evidence that any Defendant engaged in targeted recruiting, actually discussed compensation or opportunities at NVIDIA, or were involved in any way in drafting offer letter terms.

employee) with anyone at NVIDIA.  Being asked if you like your job in response to a question

from a former colleague cannot and does not constitute solicitation to leave the colleague's

current employer.[5]

Without substantial evidence of actual solicitation, AMD has not shown a likelihood of

success on the breach of contract claim.

D.    *The Court May Not Presume Irreparable Injury.*

The Court cannot presume irreparable injury. On May 15, 2006, the U.S. Supreme Court

decided the case of *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). The Court first set

forth the long-standing requirements for injunctive relief:

> According to well-established principles of equity, a plaintiff seeking a permanent
> injunction must satisfy a four-factor test before a court may grant such relief. A
> plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are inadequate to
> compensate for that injury; (3) that, considering the balance of hardships between
> the plaintiff and defendant, a remedy in equity is warranted; and (4) that the
> public interest would not be disserved by a permanent injunction.

547 U.S. at 391. The Court then flatly rejected the assertion that injury may be presumed in

patent cases, holding that "the decision whether to grant or deny injunctive relief rests within the

equitable discretion of the district courts, and that such discretion must be exercised consistent

with traditional principles of equity, in patent disputes no less than in other cases governed by

---

[5] Nor do Exhibits 25 and 60 support AMD's claim of solicitation.  Exhibit 25 was sent after Mr. Kociuk has been contacted by NVIDIA (without the involvement of any of the defendants) and after he had already indicated his interest in working for NVIDIA.  It starts with an email from Qualcomm to Mr. Kociuk (11/30/2012 8:22 AM), followed by a statement from Mr. Kociuk to Ms. Desai regarding putting an application in with Cavium Networks (11/30/2012 11:22 AM). Only then does Ms. Desai respond, "I want you to come with me" (11/30/2012 12:25 PM). In so doing, Ms. Desai did not solicit Mr. Kociuk to leave AMD. She merely indicated that if Mr. Kociuk were leaving AMD anyway, she would like to continue working with him. This is not a solicitation in violation of her contract. Similarly, Exhibit 60 is not solicitation. Ms. Desai had already been contacts by NVIDIA and scheduled for interviews without any involvement of the other defendants.  The email was sent after the interviews and after Ms. Desai had expressed her enthusiasm about coming to work at NVIDIA, should she receive an offer. The email was sent before any offer had been made, indeed before she had submitted the paperwork for a background check.

such standards." *Id.* at 394. The Court remanded for correct application of "the traditional four-factor framework that governs the award of injunctive relief."

Neither of the two cases AMD cites for the "presumption" of irreparable injury discuss or attempt to distinguish *eBay*. *See Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F.Supp.2d 217 (D.Mass. 2011); *TouchPoint Solutions, Inc. v. Eastman Kodak Co.*, 345 F.Supp.2d 23 (D.Mass. 2004). In fact, *Optos*, the only case cited by AMD for a presumption that was decided since *eBay*, found irreparable harm even without the presumption, so did not rely on such a presumption. 777 F.Supp.2d at 241.[6] Other courts have, since *eBay*, declined to presume irreparable injury on trade secret claims, particularly on facts such as presented here. *See TMX Funding Inc v Impero Technologies Inc*, 2010 WL 2745484 *7 (N.D. Cal. 2010) (refusing to find irreparable injury where the plaintiff did not show that defendant retained the trade secret information or was in any position to use that information to the plaintiff's detriment);[7] *see also Uhlig LLC v Shirley*, 2012 WL 2458062 (D.S.C. 2012) (where damage could be quantified, no irreparable injury shown by taking and use of trade secret information); *Liberty Power Corp LLC v Katz*, 2011 WL 256216 (E.D.N.Y. 2011) ("a trade secrets plaintiff must establish on a case-by-case basis that there is an actual or imminent risk that it will suffer irreparable harm in the absence of a preliminary injunction"). The same result should follow here. Since defendants have not retained the trade secret information, and are not in any position to use that information

---

[6] *Touchpoint*, decided before *eBay*, apparently relied on the presumption of irreparable harm but also noted that the trade secret information had apparently already been disclosed to others. *See* 345 F.Supp.2d at 32.

[7] AMD asserts that the return of all the information does not eliminate the likelihood of future harm, citing *Life Image, Inc. v. Brown*, 29 Mass. L. Rep. 427, 2011 Mass. Super. LEXIS 338 (2011). (Bench Memo, p. 12 n.10.) That case does not support that proposition. Instead, the plaintiff there sought to enjoin the defendant from working for a competitor in violation of a non-compete and non-disclosure agreement. 2011 Mass. Super. LEXIS 338 *11 ("Chiefly, the plaintiff's claim is that Mr. Brown is in violation of the covenant not to compete.") and *25 ("The public interest will not be deleteriously affected by restricting Mr. Brown's employment before trial of the case."). Moreover, there was evidence that the defendant had already violated the TRO by deleting data after receipt of the order. *Id.* at *10-11. Even on that evidence, when discussing the confidential information, the court stated that the issuance of a preliminary injunction required that plaintiff show more due to "the potential harm to Mr. Brown." *Id.* at *14 n.3.

to AMD's detriment, there cannot be a finding of irreparable injury. There is no reason to deviate from the "traditional" framework for injunctive relief.

Moreover, as discussed more fully above, the very Massachusetts statute cited by AMD, MASS. GEN. LAW ch. 93, § 42A, requires a showing of actual use, which is the type of irreparable injury that AMD has not shown. MASS. GEN. LAW ch. 93, § 42A.[8] Whether the court applies the requirements of Massachusetts law or the restrictions of *eBay*, in either event the court cannot presume irreparable injury. Because AMD has not shown such injury, the Court should refuse to enter a preliminary injunction.

With respect to AMD's solicitation claim, it has again not shown any irreparable injury. It has not shown that defendants solicited or are continuing to solicit AMD employees to leave AMD. This fact distinguishes the present case from the cases cited by AMD in support of its argument that soliciting constitutes irreparable injury. *See Marsh v. Karasaki*, 2008 U.S. Dist. LEXIS 90986 at *45 (S.D.N.Y.) (enjoining defendant who directly and indirectly solicited clients and employees and openly worked on those customer accounts); *State Street Corp. v. Barr*, 10 Mass. L. Rep. 599, 1999 Mass. Super LEXIS 432 at *14, *17, *23 (enjoining one defendant shown to have solicited customers, but denying injunction against two others not shown to have solicited).[9] AMD has not shown a continued defection of AMD employees due to any defendant's conduct. It has not shown that defendants have ever used the "identities, preferences, salaries and circumstances of AMD employees" (Bench Memo p.11) to lure AMD employees away from AMD. Nor has it shown that damages are not an adequate remedy.

---

[8] Massachusetts is one of four states that have not adopted the Uniform Trade Secrets Act. The UTSA, in contrast to Massachusetts law, expressly provides for an injunction against "actual or threatened misappropriation." *See*, *e.g.*, Va. Code § 59.1-337. Thus any cases applying the law of a UTSA state are not applicable on this issue.

[9] *State Street* also undercuts AMD's assertion that all it seeks is "to requir[e] Defendants to do what they have already promised to do." (Bench Memo p.12.) The *State Street* defendants all had non-solicitation agreements, but only the one shown to have solicited clients was enjoined against such future solicitation. 1999 Mass. Super LEXIS 432 at *14, *17, *23.

For the foregoing reasons, defendants request that this Court not issue a Preliminary Injunction against them.

Respectfully submitted,

MORGAN LEWIS & BOCKIUS LLP
*Attorneys for Defendants*

By: */s/* Todd S. Holbrook
              Todd S. Holbrook, BBO # 563828
              Morgan, Lewis & Bockius LLP
              225 Franklin Street, 16th Floor
              Boston, Massachusetts 02110
              Tel:    617.341.7700
              Email: tholbrook@morganlewis.com

By: /s/ Melinda S. Riechert
              Melinda S. Riechert (CA #65504)
              Morgan, Lewis & Bockius LLP
              2 Palo Alto Square
              3000 El Camino Real, Suite 700
              Palo Alto, CA  94306
              Tel:    650.843.4000
              Email: mriechert@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2013, the foregoing document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). A paper copy will be served by mail on all non-registered participants.

/s/ Todd S. Holbrook
Todd S. Holbrook

DB2/ 23920972.1

20