# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____ )
**ADVANCED MICRO DEVICES, INC.**     )
     Plaintiff,     )
     )
     v.     )     **CIVIL ACTION**
     )     **No. 13-40007-TSH**
**ROBERT FELDSTEIN, MANOO DESAI,**     )
**NICOLAS KOCIUK, RICHARD HAGEN,**     )
**DEEPAKSRIVATS THIRUMALAI,**     )
     Defendants.     )
_____ )

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS TO DISMISS
**June 10, 2013**

**HILLMAN, J.**

This is an action for misappropriation of trade secrets, unfair competition, breach of

contract, violation of the Computer Fraud and Abuse Act ("CFAA"), and conspiracy.[1]  Plaintiff

Advanced Micro Devices, Inc. ("Plaintiff" or "AMD") has already sought and received a

Preliminary Injunction ("PI") against four defendants, and a Temporary Restraining Order

---

[1] Plaintiff brings a total of seven claims.  Count I, raised against Feldstein, Desai, Kociuk and Thirumalai, is for misappropriation of Trade Secrets under Massachusetts common law.  Count II, raised against Feldstein, Desai, Kociuk and Thirumalai, is for misappropriation of trade secrets under Mass. Gen. Law ch. 93, § 42, and § 42A.  Count III, raised against Feldstein, Desai, Kociuk, and Thirumalai, is for unfair competition under Mass. Gen. Law ch. 93A § 11.  Count IV, raised against Feldstein, Desai, Kociuk and Thirumalai, is for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Count V, raised against Feldstein, Desai, Kociuk and Thirumalai, is for breach of the employee's duty of loyalty under Massachusetts common law.  Count VI, raised against all Defendants, is for breach of contract, through (1) failing to return confidential AMD information at the end of their employment and (2) solicitation of AMD employees.  Count VII, raised against Desai and Kociuk, is for conspiracy.

("TRO") against the fifth defendant.[2]  The four enjoined defendants, Feldstein, Hagen, Desai,

and Kociuk (collectively "Defendants") move to dismiss all claims against them under Fed. R.

Civ. P. 12(b)(6).  Defendant Thirumalai has not yet moved to dismiss the charges against him, so

like this Court's prior Memorandum and Order on Plaintiff's Application for Preliminary

Injunction (Docket No. 105), this order does not address the claims against him.

## I. <u>Standard of Review</u>

In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of

all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom.

*Ruiz v. Bally Total Fitness Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d

75, 77 (1st Cir. 1999)).  A pleading must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard set

forth in Rule 8 does not require "detailed factual allegations, but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555, 127 S. Ct. 1955 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct.

2932, (1986)).  A complaint will not suffice if it offers "naked assertion[s]" devoid of "further

factual enhancement."  *Twombly*, 550 U.S. at 557.  "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (internal quotations

omitted).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to

show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st

Cir. 2008) (internal quotations and original alterations omitted).  Therefore, under the

---

[2] The five defendants are as follows: Defendant Robert Feldstein ("Feldstein"), Defendant Manoo Desai ("Desai"), Defendant Nicolas Kociuk ("Kociuk"), Defendant Richard Hagen ("Hagen"), and Defendant Deepaksrivat Thirumalai ("Thirumalai").  Thirumalai was not originally a party to this suit, and was added to Plaintiff's Second Amended Complaint in March 2013.

*Twombly/Iqbal* standard, Plaintiff's claim must clear two hurdles, (1) the pleaded facts must contain sufficient particularity to be plausible, and (2) they must also, if assumed to be true, establish a prima facie case for relief.

Furthermore, where a party filing or opposing a motion to dismiss under Rule 12(b)(6) presents matters outside the pleadings which are considered by the court, the motion to dismiss will be treated as one for summary judgment in accordance with Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b)(6); *Trans-Spec Truck Serv. Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). Courts may consider documents the authenticity of which are not in dispute—such as public records—without converting the motion into one for summary judgment. *Id.*

## II. Facts

A substantial quantity of extrinsic evidence has already been presented to the Court as part of Plaintiff's Application for Preliminary Injunction. However, under the Rule 12(b)(6) standard, the Court will rely only upon the facts contained in Plaintiff's Second Amended Complaint or incorporated therein by reference. For the sake of brevity, the Court hereby incorporates the statement of facts set forth in its prior order (Docket No. 105) to the extent that that statement reflects the facts included in the Second Amended Complaint.[3]

## III. Discussion

Defendants individually move to dismiss every claim against them. The Court will address the motions of Feldstein, Hagen, Desai, and Kociuk collectively in this order, considering each Count in turn.

### A. *Counts I and II, Misappropriation of Trade Secrets*

---

[3] The testimony presented to the Court in February 2013 at the preliminary injunction hearing is not contained in the complaint, nor are the specific details of the forensic analysis conducted by Elysium Digital. The Business Protection Agreements ("BPAs") signed by Feldstein, Desai, and Kociuk are incorporated into the Second Amended Complaint by reference, as are the contents of the emails presented to the Court at that hearing.

Count I, raised against Feldstein, Desai, and Kociuk, is for misappropriation of Trade Secrets under Massachusetts common law; Count II, raised against Feldstein, Desai, and Kociuk, is for misappropriation of trade secrets under Mass. Gen. Law ch. 93, § 42, and § 42A.  For the reasons set forth in this Court's prior order, Plaintiff has demonstrated a likelihood of success on the merits with regard to misappropriation.  Even considering only the evidence included in the Complaint these allegations contain a level of specificity sufficient to surpass the *Twombly/Iqbal* plausibility threshold.

### B. *Count III, Unfair Competition under Mass. Gen. Law ch. 93A*

Count III, against Feldstein, Desai, and Kociuk is for unfair competition under Mass. Gen. Law ch. 93A, § 11.  This claim is dismissed as against all three defendants as they correctly assert the "intra-enterprise" exception to Chapter 93A, § 11.  *See Guest-Tek Interactive Entm't, Inc. v. Pullen*, 665 F. Supp. 2d 42, 46 (D. Mass. 2009).  Plaintiff attempts to define the employer-employee relationship as existing within normal trade and commerce.  This position has been explicitly rejected by the Supreme Judicial Court of Massachusetts.  *Bertrand v. Quincy Mkt. Cold Storage & Warehouse Co.*, 728 F.2d 568, 571 (1st Cir. 1984); *id.* (citing *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 23, 679 N.E.2d 191 (1997); *Manning v. Zuckerman*, 388 Mass. 8, 13-14, 444 N.E.2d 1262 (1983)).

Plaintiff further argues that the misappropriation claims against Feldstein, Desai, and Kociuk are wholly independent from their employment at AMD, and therefore are no bar to the Chapter 93A claim.  *See Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.*, 80 Mass. App. Ct. 841, 847, 957 N.E.2d 1116, 1121 (2011).  That is not an accurate assessment of Plaintiff's pleaded claims.  AMD has not alleged any facts suggesting that Defendants misappropriated trade secrets through means *other* than abusing their positions as AMD employees.

Consequently, the employee/employer relationship is a necessary element of the misappropriation claims. *See Guest-Tek*, 665 F. Supp. 2d at 46. Plaintiff's unfair competition claim is therefore properly barred as a matter of law by the "intra-enterprise" exception and the motions to dismiss will be allowed.[4]

### C. Count IV, violation of the CFAA

Count IV, raised against Feldstein, Desai, and Kociuk, is for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. AMD alleges that Feldstein, Desai, and Kociuk have knowingly, and with intent to defraud, accessed AMD's protected computer network either without authorization or in a manner than exceeded their authorized access.[5] Originally passed in 1984 and amended several times since, the CFAA created an entirely new category of crimes to address the issue of computer hacking. The CFAA is anything but a well-settled area of law, courts in different circuits have adopted significantly different interpretations of this act over the past decade. *Compare United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012), *and Wentworth-Douglass Hosp. v. Young & Novis Prof'l Ass'n*, 10-CV-120-SM, 2012 WL 2522963 (D.N.H. June 29, 2012), *with United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010), *and Guest-Tek*, 665 F. Supp. 2d 42.

Most relevant to this case are § 1030(a)(2)(C) and § 1030(a)(4). § 1030(a)(2)(C) states that it is a violation of the statute to "intentionally [access] a computer without authorization or exceed[] authorized access and thereby [obtain]—…information from any protected computer."

---

[4] Defendants simply do not compete with AMD in a fashion cognizable under Chapter 93A, § 11. The alleged misappropriation could form the basis of a Chapter 93A, § 11 claim against an actual market competitor (e.g., Nvidia) if AMD could show that the alleged misappropriation occurred and that the competitor participated therein. No such competitor is named in the Second Amended Complaint.

[5] The Second Amended Complaint does not specify which provision of the CFAA Feldstein, Desai, and Kociuk allegedly violated. So long as AMD pleads damages in excess of $5,000 within a twelve-month period (as per 18 U.S.C. § 1030(c)(4)(A)(i)(I), § 1030(g)) AMD can maintain a civil action for a violation of any provision of the statute.

The breadth of this provision is difficult to understate.  § 1030(a)(4) provides that it is a violation of the CFAA to

> knowingly and with intent to defraud, [access] a protected computer without authorization, or [exceed] authorized access, and by means of such conduct [further] the intended fraud and [obtain] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

Neither the term "without authorization" nor the word "authorization" are defined by the CFAA, although the act does define "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter[.]"  18 U.S.C. § 1030(e)(6).  Despite this statutory definition the exact parameters of "authorized access" remain elusive.

Courts have generally adopted one of two positions when interpreting the CFAA.  A narrow interpretation reflects a technological model of authorization, whereby the scope of authorized access is defined by the technologically implemented barriers that circumscribe that access.  Thus if Company C maintains two secure servers, X and Y, and issues Employee E valid login credentials for Server X but not for Server Y, then Employee E has authorized access to Server X, but not to Server Y.  Any data accessed by Employee E from Server X would be with authorization no matter how Employee E used that information.  However, if Employee E used his/her Server X access to illicitly access Server Y, any data thus accessed on Server Y would be outside the scope of authorization.

By contrast, a broader interpretation defines access in terms of agency or use.  Thus wherever an employee breaches a duty or loyalty, or a contractual obligation, or otherwise acquires an interest adverse to the employer, their authorization to access information stored on an employer's computer terminates and all subsequent access is unauthorized/exceeds the scope of authorization, whether or not the access is still technologically enabled.  Thus, using the

example stated above, Employee E *would* exceed the scope of his/her authorized access if data accessed from Server X was used for some purpose that was prohibited by Employee E's contractual or legal obligations to Company C.

Proponents of a narrower interpretation suggest that Congress' intent in passing the CFAA was to address computer hacking activities and not to supplement state misappropriation of trade secrets laws. *Nosal*, 676 F.3d at 857 (majority opinion). They further argue that expanding the definition of authorization to encompass extrinsic contractual agreements has far-reaching and undesirable consequences, such as potentially transforming idle internet browsing at work into a federal crime. *Id.* at 860. Proponents of a broader interpretation point to the sweeping language of the CFAA itself, as well as a consistent pattern of amendments expanding the scope of the CFAA over the past twenty years, as evidence that Congress did intend for the CFAA to have these wide-ranging effects. *Guest-Tek,* 665 F. Supp. 2d at 45. Furthermore, they argue that other statutory provisions, such as the "intent to defraud" requirement in 18 U.S.C. § 1030(a)(4), will prevent the CFAA from criminalizing benign activities such as workplace procrastination. *Nosal* 676 F.3d at 866 (Silverman, J., dissenting).

There is no express indication in the legislative history of the CFAA that Congress intended for employers to sue at-will employees to recover economic damages resulting from time spent looking at personal emails instead of working. *See id.* at 857-58 (majority opinion). However, any information stored on any computer can satisfy the textual requirements of § 1030(a)(2)(C). Therefore, if this Court were to adopt a broad interpretation of the term of art "access that exceeds the scope of authorization" then arguably any violation of a contractual obligation regarding computer use becomes a federal tort so long as a very minimal damages

threshold is met ($5,000 in any twelve-month period).[6]  The dissenting opinion in *Nosal*

dismissed this concern, noting that the CFAA provision at issue in that case, § 1030(a)(4),

included an "intent to defraud" requirement that effectively differentiated between harmless

workplace procrastination and more serious theft of intellectual property.  *Nosal*, 676 F.3d at 866

(Silverman, J., dissenting).     This case demonstrates the shortcomings of that position as

AMD's allegations apply to both § 1030(a)(4) and § 1030(a)(2)(C) which includes no such fraud

requirement.

     Moreover, as the majority in *Nosal* noted, these features are substantially more troubling

in a criminal context.  *Id.* 676 F.3d at 860-61 (majority opinion).  It is not possible to define

authorization narrowly for some CFAA violations and broadly for others.  *Powerex Corp. v.*

*Reliant Energy Servs., Inc.*, 551 U.S. 224, 232, 127 S. Ct. 2411 (2007) (holding that "identical

words and phrases within the same statute should normally be given the same meaning").  It is

obviously absurd to impose criminal liability for checking personal email at the workplace, or

some similarly innocuous violation of an employee computer use agreement.  Nor is it

acceptable to rely solely upon prosecutorial discretion to refrain from prosecuting trivial

offenses.  *Nosal*, 676 F.3d at 862 (majority opinion).  As between a broad definition that pulls

trivial contractual violations into the realm of federal criminal penalties, and a narrow one that

forces the victims of misappropriation and/or breach of contract to seek justice under state, rather

than federal, law, the prudent choice is clearly the narrower definition.

     At the time of this order, the First Circuit has not clearly articulated its position on this

issue.  Some district judges have read *EF Cultural Travel BV v. Explorica, Inc.* (*EF Cultural I*),

---

[6] AMD has pleaded that the "diagnostic measures AMD took after it learned of the defendants' unlawful access and copying and/or transmitting of information, including but not limited to the costs of engaging a computer forensics firm" is in excess of $5,000.  *Second Am. Compl.* ¶ 210 (Docket No. 91).  The Court is troubled by the implication that the mere act of ascertaining whether or not there has been a violation of the CFAA is likely to cost enough money to meet the statutory threshold for violating the CFAA.

274 F.3d 577 (1st Cir. 2001) as an endorsement of the broader interpretation.  *Guest-Tek*, 665

F.Supp.2d 42.  Others have read *EF Cultural I* as supporting a broad interpretation only in dicta,

and have adopted a narrower interpretation.  *Wentworth-Douglass*, 10-CV-120-SM, 2012 WL

2522963.  It is not clear to me that *EF Cultural I* is a plain endorsement of a broad interpretation.

In that case, the employee/defendant worked at a travel-booking website and gave unique

information to a competitor that allowed that competitor to log into the employer's website as a

tour leader and obtain sensitive pricing information to which the competitor would otherwise not

have had access.  *EF Cultural I*, 274 F.3d at n.14.  This detail shifts *EF Cultural I* much more

clearly into the realm of "access that exceeds authorization," because it involves gaining access

to information through means of a deception, i.e., pretending to be a tour leader.

Turning to the case at hand, AMD has not pleaded any analogous facts.  AMD favors a

broader interpretation of the CFAA and alleges that merely by violating their contractual

agreements and/or their duty of loyalty to AMD, Feldstein, Desai, and Kociuk rendered access

that would otherwise have been authorized "without authorization" or "exceeding authorization"

because they possessed an interest adverse to that of AMD.  The Second Amended Complaint

includes specific facts about when and how Feldstein, Desai, and Kociuk logged into AMD's

secure network with valid login credentials and accessed confidential AMD information which

they later retained in violation of their respective contractual agreements with AMD.   The Court

notes that while the Second Amended Complaint alleges intent to defraud on the part of

Feldstein, Desai, and Kociuk, it is sparse on the details of any such fraud or deception.[7]

---

[7] The word "fraud" does not appear at all in the "Facts" section of the Second Amended Complaint.  Indeed, the the word "fraud" appears only six times in the Second Amended Complaint.  Five of those times it is used in the title of the "Computer Fraud and Abuse Act," and the sixth time is paragraph 209, where AMD alleges that Felstein, Desai, and Kociuk intended to "defraud" AMD.  No further details are provided.

Plaintiff's allegations are thus insufficient to sustain a CFAA claim under a narrow interpretation the CFAA and, for the reasons stated above, the narrower interpretation is preferable.  However, this is an unsettled area of federal law, and one where courts have yet to establish a clear pleading standard.  Given the incomplete nature of the evidentiary record and out of an abundance of caution, I will not dismiss these claims at this time.  If AMD can plead specific details indicating that some or all of the defendants used fraudulent or deceptive means to obtain confidential AMD information, and/or that they intentionally defeated or circumvented technologically implemented restrictions to obtain confidential AMD information, then the CFAA claims will surpass the *Twombly/Iqbal* standard.  Otherwise these claims will be dismissed once the factual record is complete.[8]

### D. Count V, Breach of Employees Duty of Loyalty

Count V, raised against Feldstein, Desai, and Kociuk, is for breach of the employee's duty of loyalty under Massachusetts common law.  Under Massachusetts law, this duty attaches to some, but not all, employees.  Executives, directors, other senior officers, and partners must refrain from competing with their employer during their employment.  *E.g.*, *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 736 (1st Cir. 1982); *Sterling Research, Inc. v. Pietrobono*, 2005 WL 3116758 at *10 (D. Mass. 2005); *Meehan v. Shaughnessy*, 404 Mass. 419, 433 (1989) (partners).  AMD's Second Amended Complaint clearly identifies Feldstein as such an executive.[9]  Combined with the sufficiency of the misappropriation claims against him, AMD

---

[8] The Court notes that even if the CFAA claims are dismissed at a later date, the pendant state law claims need not be remanded to state courts.  28 U.S.C. § 1367(c); *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012).  It would be extremely inefficient to remand this case to state court given the quantity of evidence already presented to this Court.

[9] AMD also pleads that Hagen occupied an executive/director level position before moving to Nvidia, and thus owed AMD a fiduciary duty.  However, AMD does not allege that Hagen breached this duty and he is not included in Count V of the Second Amended Complaint.

has established a prima facie case for breach of the employee's duty of loyalty and Feldstein's motion to dismiss fails.

AMD has not, however, pleaded that Desai and Kociuk were executives, officers or directors of AMD. *Second Am. Compl.* ¶¶ 214-221 (Docket No. 91). Desai was a senior manager of ASIC/Layout design and Kociuk was an engineer reporting directly to Desai. "Rank-and-file" employees are not captured by the employee's duty of loyalty unless they occupy "a position of trust and confidence." *TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 266 (D. Mass. 2008). Plaintiff pleads that Desai and Kociuk both had access to confidential AMD information, and therefore held such positions of "trust and confidence." Pl.'s Opp, to Mot. to Dismiss at 11-12 (Docket No. 69) (citing *id.*; *Meehan*, 404 Mass. at 438; *Inner-Tite Corp. v. Brozowski*, 27 Mass. L. Rep. 204 (2010).[10]

The Court is wary of holding that any employee given access to any confidential information owes a fiduciary duty to his or her employer. However, as hardware designers working for a high-tech business that generates much of its revenue from intellectual property, they had access to confidential information of substantial value. Construing all factual ambiguities in favor of AMD, it is plausible that Desai and Kociuk held special positions of trust and confidence and did owe AMD a fiduciary duty. However, in order to sustain these allegations through summary judgment, AMD must produce specific evidence sufficient to establish that Desai and Kociuk were in positions entrusting them with a level of "trust and

---

[10] In *Inner-Tite*, the employee in question was not merely entrusted with confidential information; he was a regional sales manager who "worked independently, was entrusted with sensitive and confidential information, and [was] the public face of [his employer]." *Inner-Tite Corp. v. Brozowski*, 20100156, 2010 WL 3038330 (Mass. Super. Apr. 14, 2010). In *Meehan*, the employee was an associate attorney, handling a substantial caseload, who allegedly lured his clients to a new law firm. *Meehan*, 404 Mass. at 438. As an attorney actively working with clients, the associate in Meehan was, like the regional sale manager in *Inner-Tite*, a "public face" for his employer, and thus entrusted with a substantial level of trust and confidence.

confidence" analogous to that of a law firm associate or regional sales manager.[11]   Therefore

Desai and Kociuk's motions to dismiss Count V will be denied..

### E. Count VI, Breach of Contract

Count VI, raised against all Defendants, is for breach of contract, through (1) failing to

return confidential AMD information at the end of their employment and/or (2) solicitation of

AMD employees.   For the reasons set for this in this Court's prior order, Plaintiff has

demonstrated a likelihood of success on the merits of this claim as against all defendants.   Even

considering only the evidence included in the Complaint, or incorporated into the same by

reference, Plaintiff has pleaded a claim sufficient to surpass the *Twombly/Iqbal* threshold as

against all Defendants.[12]

### F. Count VII, Conspiracy to Misappropriate Trade Secrets

Count VII, raised against Desai and Kociuk, is for conspiracy.   AMD alleges that Desai

and Kociuk conspired to misappropriate trade secrets, and/or violate the CFAA, and/or breach

their employee's duty of loyalty.   In order to prove a civil conspiracy, Plaintiff must demonstrate

(1) that "a combination of two or more persons acting in concert to commit an unlawful act, or to

commit a lawful act by unlawful means, the principal element of which is an agreement between

the parties 'to inflict a wrong or injury upon another,' and (2) 'an overt act that results in

damages.'" *Grant v. John Hancock Mutual Life Insurance Co.*, 183 F. Supp. 2nd 344 (D. Mass.

2002) (internal quotations omitted).   Under the *Twombly/Iqbal* standard, AMD has pleaded a

prima facie claim for relief for misappropriation of trade secrets against both Desai and Kociuk.

---

[11] With regard to Desai and Kociuk, the Second Amended Complaint includes only the conclusory statement that
they "occupied positions of trust and confidence" by virtue of their access to confidential information.  *Second Am.
Compl.* ¶ 215 (Docket No. 91).

[12] The sole exception was Plaintiff's solicitation claim against Feldstein, where Plaintiff failed to meet the stringent
standard for injunctive relief.   However, AMD has pleaded specific facts regarding Feldstein's meeting with Desai
immediately prior to her interview with Nvidia that, in the light most favorable to AMD, establish a plausible prima
facie case for solicitation sufficient to meet the lower threshold of Rule 12(b)(6).

Plaintiff also pleaded specific facts regarding email exchanges between Desai and Kociuk that could, in the light most favorable to Plaintiff, be construed as acting in concert to commit the misappropriation.  *Second Am. Compl.* ¶ 65 (Docket No. 91).  Thus Plaintiff's conspiracy claim also surpasses the *Tombly/Iqbal* threshold.

## IV. <u>Conclusion</u>

For the foregoing reasons, Defendants' individual motions to dismiss (Docket Nos. 42-45) will be **ALLOWED** in part and **DENIED** in part as follows:

(1) with regard to Count I (Misappropriation of trade secrets under Massachusetts common law) the motions of Feldstein, Desai, and Kociuk are **DENIED**;

(2) with regard to Count II (misappropriation of trade secrets under Mass. Gen. Law ch. 93, §§ 42, 42A) the motions of Feldstein, Desai, and Kociuk are **DENIED**;

(3) with regard to Count III (unfair competition under Mass. Gen. Law. ch. 93A, § 11) the motions of Feldstein, Desai, and Kociuk are **ALLOWED**;

(4) with regard to Count IV (violation of the CFAA, 18  U.S.C. § 1030) the motions of Feldstein, Desai, and Kociuk are **DENIED**;

(5) with regard to Count V (breach of the employee's duty of loyalty under Massachusetts common law) the motions of Feldstein, Desai, and Kociuk are **DENIED**;

(6) with regard to Count VI (breach of contract) the motions of Feldstein, Hagen, and Desai, are **DENIED**;

(7) with regard to Count VII (conspiracy) the motions of Desai and Kociuk are **DENIED**.

**SO ORDERED**

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE